IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-140 |
| | ) | |
| ROBERT COLEMAN | ) | |

BRIEF IN SUPPORT OF DETENTION

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Timothy M. Lanni, Assistant United States Attorney for said District, files the following brief in support of detention:

I.  Introduction and Procedural Overview

A one-count Indictment was returned against Robert Coleman on May 14, 2019 for conduct that occurred on October 27, 2017. Thereafter, defendant appeared in federal court for an initial appearance and arraignment. At that time, defendant waived his right to a detention hearing. On September 10, 2019, defendant moved for bond. The Government's response now follows.

II.  The Facts[1]

On October 27, 2017, FBI Special Agents and Task Force officers utilized a confidential human source in order to conduct a controlled purchase of fentanyl from Robert Coleman. FBI provided the confidential human source with approximately $3,000 in agency funds. Additionally, the confidential human source was to pay back Coleman $6,000 for fentanyl that Coleman had previously fronted him. The deal was conducted inside of Coleman's Black Audi. The confidential

---

[1] As defendant initial waived his right to a detention hearing, there has been no testimony as to the facts of this case. What follows is a brief outline of the Government's possible evidence against defendant. At a future hearing, the Government would either submit a proffer and offer a witness for cross-examination or submit live testimony.

human source returned to FBI investigators and turned over a quantity of narcotics. FBI submitted these narcotics to the Allegheny County Officer of the Medical Examiner Laboratory for testing. Testing revealed that the narcotics purchased from Coleman was a quantity of approximately 96 of a mixture of fentanyl and acetylfentayl, a fentanyl analogue.

Almost immediately after the controlled purchase, FBI investigators followed Coleman in his car and conducted a probable cause traffic stop. Coleman agreed to speak with investigators. He even consented to the agents moving his car to a more discrete location so they could speak. Coleman was read his Miranda rights which he understood and waived by stating he wished to speak to investigators. Coleman advised law enforcement that he was a large scale drug trafficker and for the last four years he would routinely buy up to 250 grams of heroin from one supplier at a time. Coleman also identified that he had another supplier from whom he would buy approximately 100 grams of heroin at a time. Coleman then identified that there were multiple individuals he would sell ounce quantities of heroin to for eventual redistribution.

Coleman also consented to a search of his car and person. FBI investigators found approximately $140 dollars on Coleman's person. FBI investigators found $9000 in the center console of his car. This matched the amount given to Coleman from the confidential human source for the fentanyl purchase.

### III. The Law – Risk of Flight and Danger to the Community

The Bail Reform Act provides that with respect to certain specified crimes, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community. Title 18, United States Code, Section 3142(e).  See also United States v. Giampa, 755 F. Supp. 665, 668 (W.D. Pa. 1990).   Section 3142(e) states:

> Subject to rebuttal...it shall be presumed that no condition or combination of conditions will reasonably assure...the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)...

See also United States V. Perry, 788 F.2d 100, 106 (3d Cir. 1986).

In other words, the presumption of risk of flight and community danger arises where there is probable cause to believe that the defendant has committed a violation of the Controlled Substances Act which carries a maximum penalty of ten years or more. United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986). Due the nature of the current case and the filing of a special notice for an 851 information, Coleman faces a mandatory minimum term of ten years and a maximum of life. This factor alone would make him a risk of flight.

Where the presumption of risk of flight and/or community danger arises, a defendant must rebut the presumption by presenting "some credible evidence that he will appear and will not pose a threat to the community."  It is firmly established that evidence pertaining solely to "character and lifestyle" or community ties is insufficient to meet this burden. United States v. Delker, 757 F.2d at 1396 (legislative history of the Bail Reform Act shows that "presence of [a tie to the community] ... has no correlation with the question of safety of the community."). See also, United States v. Strong, 775 F.2d 504, 508 (3d Cir. 1985).[2]

"The statutory language, as well as the legislative history [of the Bail Reform Act],

---

[2] The law is clear that even if rebutted, the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with the other factors set forth in 18 U.S.C. § 3142(g). See United States v. Dominquez, 783 F.2d 702 (7th Cir. 1986).

unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." Strong, 775 F.2d at 506.   Indeed, Congress and the Third Circuit have provided this guidance:

> The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. ... **The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

Id. at 507 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original).   Congress and the Third Circuit further recognized:  "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity.   Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism."   Strong, 775 F.2d at 507 (quoting S.Rep. No.225, 98th Cong., 1st Sess. 20).   Accord United States v. Cervantes, 951 F.2d 859, 861 (7th Cir. 1992) (defendant involved in the distribution of large quantities of drugs poses continuing danger to the community); United States v. Ramirez, 843 F.2d 256, 258 (7th Cir. 1988) (same).

If a defendant is able to rebut the presumptions, the Court then must determine whether the government has met its burden for pretrial detention.  The United States must establish risk of flight by a preponderance of the evidence (see United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986)) and danger to the community by clear and convincing evidence.   18 U.S.C. § 3142(f).

In determining whether a defendant poses a danger to the community, the following factors are to be considered:

> (1)   the nature and circumstances of the offense charged, including whether the offense ... involves a narcotic drug;

4

  (2)  the weight of the evidence against the person;

  (3)  the history and characteristics of the person, including-

    (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,

    (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial,...; and

  (4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Title 18, United States Code, Section 3142(g). See also United States v. Perry, 788 F.2d at 106; United States v. Delker, 757 F.2d at 1398-99.

  Here, Coleman has not proffered any evidence that would rebut the presumption. Defendant has only made available another individual to act as a third party custodian and stated that he has some type of project management company. However, these are the same conditions that allowed Coleman to function as a large scale drug trafficker for many years. The Government fails to see how this would change the conditions that would prevent Coleman from being a risk of flight or danger to the community. As stated in Delker, this type of proffer, as to community ties and character, is illegally insufficient to overcome any presumption. Further, even if Coleman was able to overcome the presumption, the factors still weigh heavily in favor of his detention.

### IV. Argument

  In this case, the FBI observed and conducted a controlled purchase from Coleman and then seized the money used in the controlled purchase in his car. Additionally, Coleman admitted to

FBI investigators that he was a large scale drug trafficker and detailed his operation for FBI. These facts and circumstances weigh heavily in terms of detaining Coleman.

<u>First</u>, with respect to the nature and circumstances of the offense, Coleman is charged with possessing with the intent to distribute and actually distributing a large amount of potent and deadly fentanyl and fentanyl analogue mix. Further, the weight of this transaction, the amount of money the confidential human source owed Coleman, and Coleman's confession all support that Coleman is a large scale drug trafficker. The nature and circumstances of this offense are very dangerous.

<u>Second</u>, with respect to the weight of the evidence, the Government conducted a controlled purchase, recovered the money used in the purchase from Coleman, and have an admissible confession from Coleman that could be used to prove a much large conspiracy. While the weight of the evidence may be the least important factor, it is a factor that weighs against Coleman in this case.

<u>Third</u>, with respect to the "history and characteristics" of the defendant, everything in this case points to the fact that Coleman is a lifelong, dangerous drug dealer. Coleman was convicted in federal court for a major drug trafficking crime in the 2000s. This offense also involved the same conduct in this case: large scale opiate trafficking. Additionally, he has a separate serious drug felony in Allegheny County Court at the same time. Coleman also has an additional serious drug felony and a felony escape that are both too old and remote to count towards his criminal history score. While Coleman is nearly fifty years old, he has almost no work history. All of these factors point to one conclusion, Coleman has supported himself and his family by drug trafficking.

<u>Finally</u>, the Bail Reform Act requires the Court to consider the nature and seriousness of

the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(4). As explained above, Congress and the Third Circuit have clarified that in addition to physical violence, the Bail Reform Act "equate[s] traffic in drugs with a danger to the community," and stressed that "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" Strong, 775 F.2d at 506 (citations omitted). Coleman has had dozens of arrests in his life and numerous serious convictions over a 25 year period. The Court cannot have any confidence that Coleman would not continue to engage in such behavior when he has already been sent to federal prison for the same offense before.

## V. Conclusion

The United States has demonstrated by clear and convincing evidence that the defendant now and today poses an unacceptable danger to the community and a risk of flight. As the Seventh Circuit in United States v. Dominguez, explained:

> [A finding of dangerousness] cannot be based on evidence that [the Defendant] has been a danger in the past **except to the extent that his past conduct suggests the likelihood of future misconduct. That is, indeed, the very import of the presumption of dangerousness in § 3142(e);** it represents Congressional findings that certain offenders, including narcotics violators, as a group are likely to continue to engage in criminal conduct undeterred by the pendency of charges against them or by the imposition of a monetary bond or other release conditions.

783 F.2d at 707 (emphasis added).

Statutorily, Coleman has not overcome the presumption. He has not even proffered evidence which accepted would overcome the standard of presumption. Further, even if Coleman was able to overcome this presumption, his leadership role, the strength of the Government's evidence, Coleman's prior drug convictions, lack of work history, and poor history on supervision

7

conclusively establish that Coleman is a danger to the community and a flight risk. He should be detained.

                                  Respectfully submitted,

                                  Scott W. Brady
                                United States Attorney

By:   s/Timothy M. Lanni
       Timothy M. Lanni
       Assistant U.S. Attorney
       U.S. Post Office & Courthouse
       Suite 400
       Pittsburgh, PA   15219
       (412)894-7439 (Phone)
       Timothy.Lanni@usdoj.gov
       NJ ID No. 011242012