IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 2:19-cr-140 |
| | ) |
| ROBERT COLEMAN, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

AND NOW, this 22nd day of April, 2020, it is hereby **ORDERED** that Defendant's Motion to Vacate Detention Order (ECF No. 53) is **GRANTED**. Defendant shall be released from custody and subject to the conditions of pretrial release as set forth in this Order.

**I.    PROCEDURAL HISTORY**

On May 14, 2019, a federal grand jury indicted Defendant Robert Coleman on one (1) count of possession with intent to distribute forty (40) grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi). (Indictment, ECF No. 3.) The alleged conduct underlying the indictment involved a controlled buy conducted by the FBI and affiliated Task Force officers in October 2017. (ECF No. 46, at 2.) There, the United States alleges that Coleman sold a quantity of fentanyl to a confidential informant which led the FBI to stop Coleman's vehicle as he departed from the transaction site. (*Id.*) During that stop, an FBI agent read Coleman his *Miranda* rights. (*Id.*) Coleman allegedly then made a statement to the FBI agent regarding the controlled buy that had supposedly just occurred, as well as to his alleged involvement in drug trafficking more broadly. (*Id.* at 2–3.) Despite the evidence from the controlled buy, and Coleman's statements following the vehicle stop, the FBI did not arrest Coleman in October 2017 (or anytime later in 2017, or anytime in 2018).

Coleman proceeded to live a life of relative freedom for the next year and a half—though

he knew the FBI had an active interest in him during this time—until the United States obtained his indictment and sought an arrest warrant in May 2019. On May 16, 2019, about 18 months after he encountered the FBI, Coleman made his initial appearance before Chief Magistrate Judge Eddy. (ECF No. 12.) A few days later, at his arraignment, the United States sought his detention and Coleman pleaded not guilty and waived his right to a detention hearing. (ECF Nos. 13–17.) In September 2019, Coleman retained a new defense attorney, who replaced his previously retained counsel. Shortly thereafter, on September 12, 2019, Coleman filed a motion for bond, which the United States opposed. (ECF Nos. 29 and 31.) Then on October 10, 2019, the parties argued their positions at a bond hearing before Magistrate Judge Dodge.

Magistrate Judge Dodge found that a rebuttable presumption of detention arose under 18 U.S.C. § 3142(e)(3), because Coleman is charged with a crime punishable by more than ten (10) years in prison under the Controlled Substances Act ("CSA"). (Order, ECF No. 37.) The Court then found that Coleman had not presented sufficient evidence to rebut the presumption of detention. (*Id.*) In doing so, the Court found by a preponderance of the evidence that no conditions or combination of conditions could secure Coleman's appearance and by clear and convincing evidence that no conditions or combination of conditions could ensure the safety of other persons and the community. (*Id.*)

Specifically, Magistrate Judge Dodge based the detention decision on the finding that (1) the weight of the evidence against Coleman is strong; (2) Coleman is subject to a considerable period of incarceration if convicted; (3) Coleman has a prior criminal history; (4) Coleman's past criminal activity while on probation, parole, or supervised release; and (5) Coleman's history of alcohol or substance abuse. (*Id.*) Consequently, Coleman was ordered detained pending trial. Notably, Magistrate Judge Dodge did not base the detention decision on a finding that Coleman

has a history of convictions for crimes of violence or the use of firearms. (*Id.*) Nor did Magistrate Judge Dodge find that Coleman lacked ties to the District, stable employment, or a stable residence. (*Id.*)

On December 20, 2019, Coleman moved this Court to vacate the detention order and release him to electronic home monitoring pending trial. (ECF No. 44.) The United States opposed Coleman's motion for bond. (ECF Nos. 46 and 48.) In mid-February 2020, the Court held oral argument on Coleman's motion to vacate to detention order. (ECF No. 50.) Then, while his motion was under consideration, Coleman filed a supplement to his Motion based on the coronavirus pandemic—a circumstance that did not exist when he originally filed his motion. (ECF No. 56.) In that supplement, Coleman noted his age, forty-eight (48), and the risk of contracting COVID-19, the disease caused by the coronavirus, while held in pretrial detention. (*Id.* at 4.) The United States responded to Coleman's supplement and argued that detention was still appropriate, notwithstanding the coronavirus pandemic. (ECF No. 60.)

## II.     LEGAL STANDARD

Because Coleman was ordered detained pending trial by a magistrate judge, his motion to vacate that Order is made pursuant to 18 U.S.C. § 3145(b). That section provides:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). The district court reviews the magistrate judge's detention hearing determination *de novo*. *See United States v. Perry*, 788 F.2d 100, 107 (3d Cir. 1986).

As the Court noted earlier, 18 U.S.C. § 3142(e)(3) creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" an offense with a maximum punishment possible of ten (10) years or more under the CSA. To rebut the presumption, the defendant must put forward some credible evidence that he will not pose a flight risk or danger to the community. *See United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).

"In producing evidence to rebut the presumption, a defendant looks to the four factors which the court must consider in determining whether pretrial detention is warranted." *United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Section 3142(g) provides the specific factors the Court must consider: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant including his character, employment, family ties, community ties, length of residence in the community, and criminal history, whether at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, for an offense under federal, state, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

If the defendant rebuts the presumption, the United States may seek detention based on risk of flight by showing by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. *See United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). Or, if the United States seeks detention based on the defendant's alleged dangerousness, it must prove by clear and convincing evidence that the defendant is a danger to the safety of any other person or the community. *See United States v. Delker*, 757 F.2d 1390, 1399 (3d Cir. 1985). And even if the statutory presumption is rebutted, it

nonetheless remains as a factor in the decisional equation. If the United States can make either showing, then detention is warranted. If not, the Court must order the defendant's release and fashion a condition or combination of conditions that will secure the defendant's future appearance and ensure the community's safety.

### III. **DISCUSSION**

In this case, as in any detention matter, it is important for the parties and the Court to keep their eye on the ball that most matters, that is, considering the record before the Court, can it fashion conditions of release which will sufficiently assure the defendant's appearance at trial and which will protect the safety of others and of the community. That is the command of the Bail Reform Act.

The facts of Coleman's case present something of a closer than usual call when it comes to the application of that standard and the appropriateness of pretrial detention, mainly due to the rather odd factual predicate involved here. In the end, however, the Court concludes that Coleman has rebutted the presumption of detention. The Court also concludes that the United States has not supplied the required clear and convincing evidence that Coleman's detention is necessary to ensure the safety of the community. Most critically, nor has the United States shown by a preponderance of the evidence that there are no conditions or combination of conditions that can ensure Coleman's appearance at future proceedings. As a result, the Court will vacate the Detention Order at ECF No. 37, and order Coleman be released subject to the conditions set forth below.

In his motion, Coleman principally argues that his conduct during the year and a half between the alleged October 2017 controlled buy and his May 2019 arrest demonstrates that he is not a flight risk. (ECF No. 44, at 4–5.) In addition, he notes that he promptly arranged his surrender

when he learned of the indictment against him. (*Id.*) He also notes his significant ties to Pittsburgh, which is where he and his children live, and where he helps operate a property management business. (*Id.*) Finally, Coleman argues that the Court can employ a variety of conditions of release that would fulfill the objectives of the Bail Reform Act.

The United States, on the other hand, opposes vacating the detention order. It argues that "Coleman has not proffered any evidence that would rebut the presumption" of detention under § 3142(e)(3). (ECF No. 46, at 5.) As for the lengthy gap between the October 2017 stop and May 2019 indictment, the United States asserts that it did not charge Coleman in 2017 because it sought Coleman's cooperation in ongoing drug investigations. Additionally, during the Court's oral argument, the United States offered an FBI 302 form—the standard form used by the FBI to document witness interviews—in which a suspect in another case stated that he had purchased heroin (that turned out to be fentanyl) from Coleman during the year and a half "gap" period leading up to Coleman's indictment. The United States' point being that it suspects Coleman's alleged drug trafficking did not end in October 2017, despite knowing the FBI was on to him. (ECF No. 48, at 2–3.)

Here, Magistrate Judge Dodge properly found that a rebuttable presumption of detention arises due to the nature of the charge against Coleman. Coleman is charged with violating 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), which provides a maximum term of imprisonment of forty (40) years. So the Court easily concludes that he falls into 18 U.S.C. § 3142(e)(3)'s category of offenses that create a rebuttable presumption of detention.

Next the Court must determine whether Coleman has rebutted the presumption. The Court concludes that he has. Coleman has provided credible evidence that he is not a flight risk. For starters, he knew the FBI was on to him for over a year following the alleged October 2017

controlled buy, yet he remained in Pittsburgh. And, the converse is also true, that is federal law enforcement did not seem particularly concerned that Coleman was going anywhere, since they did not seek to arrest him or otherwise take him into custody. The Court makes this observation not out of any sense of criticism of the FBI, as none is intended, but simply because it is a reality that is both obvious and true. And when Coleman learned of the indictment against him, he quickly made arrangements for his own prompt surrender.

Coleman also points to his meaningful ties to Pittsburgh—both in terms of his family living in the area and his role with a property management company. In the Court's estimation, this is more than sufficient to rebut the presumption that Coleman poses a flight risk. Frankly, if he was going to run, in the Court's judgment, it most likely would have happened a long time ago. Crediting the United States' account of the events of October 2017, Coleman surely knew he was potentially in hot water with the law based on the alleged controlled drug buy alone, yet nothing in the record shows any attempt at flight during the nearly year and a half leading up to his indictment, or much of a worry on the part of law enforcement that he was any sort of flight risk. And, when he learned that he had been federally charged, Coleman turned himself in rather than fleeing.

As for danger to the safety of the community, Coleman has again presented sufficient evidence to rebut the presumption of detention. The United States knew about the alleged controlled buy in 2017; knew about Coleman's alleged statements about broader drug trafficking activity; and knew (or at least could have known) about Coleman's criminal record. Yet Coleman remained in the community, free of *any* formal conditions of release, for well over a year before he was indicted. The United States argues that the Court should not put much weight on the substantial gap between the alleged controlled buy and Coleman's indictment. And the Court

understands the United States' point that Coleman's arrest had it been made in 2017 might have hampered any potential cooperation. While the Court acknowledges that any cooperation by Coleman may have been important to law enforcement, it is nonetheless hard to see how the United States logically can so quickly change its tune in the detention context from "no conditions needed, go about your business" to "no conditions could possibly do the job," based on essentially the very same information. And as the magistrate judge noted, neither this case nor Coleman's prior convictions involve the use of weapons. (ECF No. 37, at 2.) Consequently, the Court concludes that Coleman has provided sufficient evidence to rebut the presumption of danger to the safety of the community. And as a result, the burden shifts to the United States.

First, the United States has not established by a preponderance of the evidence that Coleman is a flight risk. In the Court's experience, the Department of Justice rarely shows reluctance to extrapolate from past bad conduct to a prediction of future unlawful behavior. It is an argument that, in many cases, makes some sense and one that this Court and others have at times accepted in the detention context. In Coleman's case, at least when it comes to risk of flight, the shoe is on the other foot, since it is Coleman, not the United States, who argues that past really is prologue. And the record before the Court shows that he has a pretty good argument in those regards; one with which the Court generally agrees.

Though he may not have known the exact specifications, Coleman had to have at least generally known of the potential for serious punishment that he was facing from the moment the FBI stopped him following the October 2017 alleged controlled buy. After all, there are not many "minor cases" here in federal court, and most people that have had any experience with the criminal justice system know that. Yet, when the FBI let him go on his way, he did not flee the country, the state, or even the city. Instead, he remained in Pittsburgh, where his young children live and where

he helps operate a legitimate business. And when he learned, well over a year after the asserted controlled buy, that he was finally facing federal charges and perhaps any potential advantage to him from any cooperation had dissipated, he nonetheless turned himself in. All this leads the Court to the conclusion that there are combinations of conditions that can ensure Coleman's appearance at future proceedings. He did not run when there were none, so the Court believes that it would be hard to conclude that conditions cannot now be crafted that would secure his attendance as required by law.

Second, the United States has not established by clear and convincing evidence the no condition or combination of conditions of Coleman's pretrial release can ensure the safety of the community. This is not to say that Coleman's (or any other defendant's) release presents zero risk; to say that would be untrue, especially since there are rarely any "sure bet" matters before the courts. If that were not the case, the Bail Reform Act would not charge the courts with crafting and then imposing conditions of release to accompany bail, since their entire purpose is to mitigate just such risks. And as the Court noted above, this is a close case as to detention mainly because Coleman's record of conduct in the past when on bond or probation has been far from spotless. But the Bail Reform Act also carries with it the strong policy of generating conditions of release for individuals carrying the presumption of innocence as does Coleman—and it assigns the burden to the United States to demonstrate the necessity of detention. Here, the United States grounds its detention request on three (3) factors: (1) the alleged drug distribution involved in this case; (2) Coleman's history of drug convictions; and (3) the allegation that Coleman engaged in uncharged fentanyl dealing following the October 2017 alleged controlled buy. Yet, looking at the whole record, the Court cannot conclude that United States has made the necessary showing.

Again, the Court returns to the fact that the United States, via the FBI, allowed Coleman to

remain free for well over a year after the alleged October 2017 alleged controlled buy, and the alleged sale to an informant. Whether Coleman's release status was simply the product of a careful law enforcement risk-reward balancing, or was for some other legitimate reason, the fact remains that the United States did not believe Coleman needed to be immediately arrested and detained following the alleged controlled buy, or the alleged follow up sale, or have limitations placed on him akin to Court-imposed conditions of release. While the Bail Reform Act assigns judges the task of determining dangerousness for detention purposes, the Court certainly also recognizes that the United States via the FBI concluded that it was acceptable to leave Coleman in the community for a long time without any "conditions." The Court certainly agrees with the United States that fentanyl distribution poses a danger to the safety of the community. But, at this moment, Coleman like everyone else carries with him the presumption of innocence as to these charges.

Returning to the core issue before the Court under the Bail Reform Act, the Court concludes that it can fashion conditions of pretrial release aimed at securing Coleman's attendance in Court and providing for the safety of others and of the community—and of course, should Coleman fail to comply with such conditions, revocation is always an option. And the Court notes the fact that this case, unlike many others involving alleged drug distribution, does not involve firearms—nor does Coleman's history show a record of convictions for firearms use or possession.

Finally, the United States' supplemental filing points to the allegations made by another FBI information source that Coleman sold him fentanyl following the October 2017 controlled buy. Yet the Court notes that the FBI 302 form submitted in support of this argument is dated March 21, 2018—over a year before the United States sought Coleman's indictment. So, again, the United States knew what that other informant had to say about Coleman, just as it knew about his record of prior convictions, but it did not arrest Coleman for over a year. In the Court's

estimation, if it was acceptable for Coleman to be free on *no conditions* for so long based on the same information before the Court now, on this record it would certainly appear it is reasonable that *some conditions* can be imposed that will accomplish the goals of the Bail Reform Act.

While Coleman does come before the Court with a record of prior drug crime convictions, he also comes with the presumption of innocence as to these charges. And the ultimate question that the Court must address now is not the likelihood that the United States will prove Coleman's guilt beyond a reasonable doubt, but instead whether there are conditions of release that can be crafted to address the risks of non-detention in this case. For all of the reasons noted above, the Court cannot say that there are not. Thus, the Court necessarily concludes that the United States has failed to show by clear and convincing evidence that no condition or combination of conditions could ensure the safety of the community.

The Court should mention one additional matter. The Court is vacating the detention order because it concludes that Coleman rebutted the presumption of detention and the United States failed to meet its requisite burden under a traditional Bail Reform Act analysis. But the Court also will not ignore that, in the midst of the COVID-19 pandemic, it would not be logical or appropriate to bolster the population of those detained in jail by imposing detention in what at most would be considered a "tie" case. That ongoing public health emergency counsels in favor of vacating the detention order when the analysis arrives at the conclusions reached here.

### IV.    CONCLUSION

The Court concludes that (1) Coleman provided sufficient evidence to rebut the presumption of detention; (2) the United States has not shown by a preponderance of the evidence that no condition or combination of conditions can ensure Coleman's appearance at trial; and (3) the United States has not shown by clear and convincing evidence that no condition or combination

of conditions can ensure the safety of the community. As a result, pursuant to 18 U.S.C. § 3145(b), the Court vacates the magistrate judge's detention order at ECF No. 37, and **ORDERS** Coleman be released subject to an unsecured bond in the amount of $50,000, imposition of the Court's standard conditions of release, but also including home detention with monitoring via the most practicable form of monitoring as determined by the Pretrial Services Office, including voice recognition technology. That bond and those specific conditions will be set and entered by further Order.

/s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge